# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **GIDEON J. SIPIN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 2:23-cv-605-AMM** |
| | ) | |
| **THE BANK OF NEW YORK** | ) | |
| **MELLON TRUST COMPANY,** | ) | |
| **N.A., f/k/a the Bank of New York** | ) | |
| **Trust Company, N.A., Successor** | ) | |
| **to JPMorgan Chase Bank, N.A.,** | ) | |
| **as Trustee for Residential Asset** | ) | |
| **Mortgage Products, Inc.,** | ) | |
| **Mortgage Asset-Backed Pass-** | ) | |
| **Through Certificates Series 2006** | ) | |
| **RZ3;** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This case is before the court on a motion for summary judgment by defendants Bank of New York Mellon Trust Company, N.A., f/k/a the Bank of New York Trust Company, N.A., as successor to JPMorgan Chase Bank, N.A., as Trustee for Residential Asset Mortgage Products, Inc., Mortgage Asset-Backed Pass-Through Certificates Series 2006-RZ3 ("BONYM"), PHH Mortgage Corporation ("PHH"), Ocwen Loan Servicing, LLC ("Ocwen"), NewRez, LLC ("NewRez"), and JPMorgan Chase Bank, N.A. ("Chase"), Doc. 84, and a motion to strike by those defendants, Doc. 89. For the reasons outlined below, both motions are **GRANTED**.

## I.    BACKGROUND

This is a foreclosure case. The undisputed facts are these:

Plaintiff Gideon J. Sipin lives in home located at 5200 Meadowbrook Road in Birmingham, Alabama. Doc. 83-6 at 75; Doc. 83-7 at 53, 77–78. To refinance the debt on his home, he executed an adjustable-rate note with Hometown Mortgage Services, Inc. *See* Doc. 83-7 at 2–6. And to secure that note, he executed a mortgage in favor of Mortgage Electronic Registration Systems, Inc. ("MERS"). *See id.* at 11–23.

The note obligates Mr. Sipin to pay (1) $383,400.00 in principal and (2) a variable amount of interest on that principal tied to a specified rate, due on the first of each month from April 1, 2006, until March 1, 2036, at which time all remaining balances on his loan become due. *See id.* at 2–3. It also contemplates late charges should Mr. Sipin fail to make payments and defines "default" as a failure to "pay the full amount of each monthly payment on the date it is due." *Id.* at 4. The servicer of the note was required to deliver any notice due to Mr. Sipin via first class mail to the property address or at a different address as provided by Mr. Sipin. *Id.*

The mortgage Mr. Sipin executed in favor of MERS secures Hometown Mortgage Services' note by providing the home at 5200 Meadowbrook Road as collateral. *See id.* at 11–13. It requires Mr. Sipin to "pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late

charges due under the Note." *Id.* at 13. It further allows MERS to "return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current." *Id.* Alternatively, MERS "may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights . . . or prejudice to its rights to refuse such payment or partial payments in the future, but [MERS] is not obligated to apply such payments at the time such payments are accepted." *Id.* MERS "may hold such unapplied funds until [Mr. Sipin] makes payment to bring the Loan current," and should he fail to do so within a reasonable period of time, MERS "shall either apply such funds or return them to [Mr. Sipin]." *Id.*

The mortgage further provides that MERS "may charge [Mr. Sipin] fees for services performed in connection with [Mr. Sipin's] default, for the purpose of protecting [MERS's] interest in the Property and rights under" the mortgage, "including, but not limited to, attorneys' fees, property inspection and valuation fees." *Id.* at 19. And while those fees are explicitly permissible under the mortgage, the mortgage also provides that "the absence of express authority in this [mortgage] to charge a specific fee to [Mr. Sipin] shall not be construed as a prohibition on the charging of such fee." *Id.* Instead, MERS "may not charge fees that are expressly prohibited" by the mortgage "or by Applicable Law." *Id.*

The mortgage also provides that all notices given by either party concerning the mortgage "must be in writing" and those notices are "deemed to have been given . . . when mailed by first class mail or when actually delivered to [Mr. Sipin's] notice address if sent by other means." *Id.* Mr. Sipin's "notice address shall be the Property Address unless [Mr. Sipin] . . . designate[s] a substitute notice address by notice to [MERS]." *Id.* The mortgage requires Mr. Sipin to "promptly notify [MERS] of [his] change of address" using the procedure outlined above. *Id.*

By its terms, MERS may sell its mortgage (along with the note) "one or more times without prior notice to [Mr. Sipin]" and expressly acknowledges that "[a] sale might result in a change in the entity (known as the 'Loan Servicer') that collects Periodic Payments due under the Note and this [mortgage] and performs other mortgage loan servicing obligations under the Note, this [mortgage], and Applicable law." *Id.* at 20. It further contemplates that "[t]here also might be one or more changes of the Loan Servicer unrelated to a sale of the Note." *Id.*

Mr. Sipin's mortgage was assigned multiple times. In May 2010, "MERS assigned the Mortgage to The Bank of New York Mellon Trust Company, National Association f/k/a The Bank of New York Trust Company, N.A., as Successor to JP Morgan Chase Bank, N.A., as Trustee for RAMP 2006-RZ3." Doc. 83-1 ¶ 6. In February 2023, BONYM "executed a second Assignment of [the] Mortgage to B[O]NYM c/o PHH Mortgage Corporation." *Id.* ¶ 7.

The servicing of Mr. Sipin's note was also transferred multiple times. In February 2013, "[t]he servicing of the Mortgage account was transferred from GMAC Mortgage to Ocwen." *Id.* ¶ 8. Then, "Ocwen and PHH joined forces in 2019 and, effective April 1, 2019, PHH began servicing" Mr. Sipin's account. *Id.* ¶ 11. "During this time, PHH acted as a subservicer on behalf of NewRez LLC." *Id.* ¶ 12. "PHH is currently still the servicer of the Mortgage." *Id.* ¶ 13.

Ocwen, as a predecessor entity to PHH, first initiated foreclosure proceedings on Mr. Sipin's home in 2017. *See id.* ¶¶ 15–16; Doc. 84 ¶ 35; Doc. 88 ¶ 26.[1] Though Mr. Sipin's home has never ultimately been sold at a foreclosure sale, defendants and their agents have attempted to foreclose on Mr. Sipin's home four times since 2017. *See* Doc. 84 ¶¶ 35–64. Defendants have charged Mr. Sipin certain fees related to those attempts to foreclose. *See* Doc. 83-11 at 14, 60; Doc. 27 ¶ 25. During that time, Mr. Sipin signed documents to modify his mortgage loan, *see* Doc. 83-6 at 100–02; Doc. 83-8 at 3–11, but he has not made a mortgage payment since March 2018 according to PHH's records, Doc. 83-4 at 62.

---

[1] Mr. Sipin's facts listed in his response in opposition to defendants' motion for summary judgment are purportedly "derived from the record evidence." Doc. 88 at 6. But Mr. Sipin cites only his affidavit and unspecified portions of his deposition as evidence for his version of the facts. *See id.* at 6–17. As the court explained in its initial order, defendants' facts not controverted by Mr. Sipin's summary judgment response on the basis of evidence are "deemed to be admitted for summary judgment purposes." Doc. 37 at 19.

Mr. Sipin filed the operative complaint in this action on May 9, 2024, after his case was removed from the Circuit Court of Shelby County, Alabama, and this court struck the original complaint as a shotgun pleading. Docs. 20, 27. The amended complaint brings claims for unjust enrichment; breach of contract; defamation, libel, and slander; violations of the Truth-In-Lending Act; violations of the Real Estate Settlement Procedures Act; violations of the Fair Credit Reporting Act; for failure of conditions precedent; fraud; to quiet title; for declaratory relief from foreclosure; and for violations of the Fair Debt Collection Practices Act. Doc. 27 ¶¶ 32–213. The court dismissed several of Mr. Sipin's claims in its March 31, 2025, order, Doc. 71, and now defendants have moved for summary judgment on the remaining claims. Doc. 84. That motion is fully briefed. *See* Docs. 88, 90. As part of his response to defendants motion for summary judgment, Mr. Sipin submitted an affidavit containing his own testimony. Doc. 87. The defendants moved to strike his affidavit, Doc. 89, and that motion is also fully briefed. Docs. 92, 93.

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or

declarations, stipulations . . . , admissions, interrogatory answers, or other materials"

that prove the undisputed facts, or "showing that the materials cited do not establish

the absence or presence of a genuine dispute, or that an adverse party cannot produce

admissible evidence to support [a] fact." Fed. R. Civ. P. 56(c)(1)(A)–(B).

A fact is "material" if it could affect the outcome of a case. *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a dispute about a material fact is

"genuine" "if the evidence is such that a reasonable jury could return a verdict for

the nonmoving party." *Id.*

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment,

after adequate time for discovery and upon motion, against a party who fails to make

a showing sufficient to establish the existence of an element essential to that party's

case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 322 (1986). That is because "there can be no 'genuine issue

as to any material fact'" without evidence proving an element of a non-movant's

claim "since a complete failure of proof concerning an essential element of the

nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

"To defeat a motion for summary judgment, the nonmoving party may not rely on

mere allegations" but must instead "raise significant probative evidence that would

be sufficient for a jury to find for that party." *LaChance v. Duffy's Draft House, Inc.*,

146 F.3d 832, 835 (11th Cir. 1998) (cleaned up). The court must draw all available

inferences in favor of the nonmoving party. *Matsuishita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III.   ANALYSIS

Mr. Sipin's response to defendants' motion for summary judgment relies heavily on his affidavit, so the court first discusses the defendants' motion to strike that affidavit.

### A. Motion to Strike

In his sixteen-page affidavit, Mr. Sipin testifies to various aspects of his note and mortgage, his payment history, the notices he received (or did not receive) from defendants, his efforts to obtain modifications to the mortgage and note, and his damages. *See generally* Doc. 87.

The defendants contend that Mr. Sipin's affidavit should be stricken because many of the statements contained within it are conclusory and outside of Mr. Sipin's personal knowledge, Doc. 89 at 2–7, many of the statements in the affidavit are legal conclusions that Mr. Sipin is not competent to provide, *id.* at 7–10, and many of the statements contradict Mr. Sipin's deposition testimony without explanation, making the affidavit a "sham," *id.* at 10–14.

Mr. Sipin responds that his affidavit is not a sham merely because it contains legal conclusions or because it contradicts his deposition testimony. *See generally* Doc. 92. He asks the court to "disregard th[e] offending parts" of the affidavit

8

because the remainder "primarily recounts what he personally observed or failed to receive" and is not "unsubstantiated." *Id.* ¶¶ 17–18.

As an initial matter, "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

Even if an affidavit is based on personal knowledge, "a party [that] has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, . . . cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." *Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984). Thus, a district court may strike an affidavit that "flatly contradicts . . . prior deposition testimony for the transparent purpose of creating a genuine issue of fact where none existed previously." *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1306 (11th Cir. 2016). But the court must find an "inherent, unexplained inconsistenc[y] that create[s a] 'transparent sham[]'" before striking the affidavit. *Cooper v. Ga. Dep't of Transp.*, 837 F. App'x 657, 665 (11th Cir. 2020) (citing *Tippens v. Celotex Corp.*, 805 F.2d 949, 953–54 (11th Cir. 1986)).

In this case, it is clear that much of Mr. Sipin's affidavit testimony is not based on his own personal knowledge and offers legal conclusions that he is not competent

to provide. For example, Mr. Sipin testifies that he entered into a "standard Fannie Mae/Freddie Mac" mortgage. Doc. 87 at 2. But Mr. Sipin is not a mortgage expert, nor is he an expert in the regulations governing mortgages. Mr. Sipin also testifies that his loan "servicers consistent failed to apply [his] monthly payments properly." *Id.* at 5. For that allegation, he offers no evidence—not his bank records, not the defendants' business records, nor any other evidence. Mr. Sipin offers no explanation of how he would have come to know his allegations to be true. These are just examples of statements not based on personal knowledge and unsupported by evidence.

Additionally, it is clear that Mr. Sipin's affidavit is a sham. In Mr. Sipin's deposition, he admitted that he did not always pay the amounts requested by his loan servicers, that he received mail at a P.O. box and at his home, that he "open[ed] all [of his] mail," that he had no memory of notifying his loan servicers of any change of address, and that he had no memory of making mortgage payments since March 2018 that were not rejected or returned. Doc. 83-6 at 53–54, 75–76, 80–81, 90, 108, 133, 140–44. In his affidavit, he directly contradicts nearly all of those statements without explanation. The court's review yielded the following specific examples:

- Mr. Sipin's affidavit: "I have made payments every month since the loan originated in 2006, except when the servicers refused or returned them." Doc. 87 at 5.

10

  o Mr. Sipin's deposition testimony: "It's possible that I made payment or not made a payment. It's possible that they turned it down or returned it or not returned it." Doc. 83-6 at 81.

  o Mr. Sipin's deposition testimony, after being asked, "And you don't recall whether you attempted to make any payments for any of these trial plans in this time frame?": "I don't recall." *Id.* at 133.

- Mr. Sipin's affidavit: "I have not received regular monthly mortgage statements as required by the Mortgage contract and RESPA requirements under 12 C.F.R. § 1026.41, which mandates periodic statements for residential mortgage loans. Although, the Defendants at my deposition claimed to be sending notices and letters to my P.O. Box 382073, I did not receive them." Doc. 87 at 7.

  o Mr. Sipin's deposition testimony, after being asked "do you know when you closed [the P.O. box] and stopped using it?": "A year ago." Doc. 83-6 at 19.

  o Mr. Sipin's deposition testimony: "I open all my mail." *Id.* at 108.

Mr. Sipin offers no explanation for his sudden recollection of material facts when faced with defendants' motion for summary judgment. He does not state that

he reviewed his own bank or mail records, nor does he provide them as evidence. He simply offers his testimony as if he remembered the exact details of how the facts of this lawsuit arose at some point after his deposition, where he remembered little to nothing about the facts alleged in this case.[2] "Just like [Mr. Sipin's] Amended Complaint, [his] affidavit[] [is] full of accusations, labels, and conclusory statements, but void of specific details." *Townsend*, 2021 WL 54201, at *6. Mr. Sipin's deposition testimony and his affidavit contain numerous inconsistencies that the court cannot ignore. Therefore, defendants' motion to strike, Doc. 89, is **GRANTED**.

### B. Motion for Summary Judgment

Defendants contend that they are entitled to summary judgment on all of Mr. Sipin's claims. Doc. 84 at 18. The court discusses each of Mr. Sipin's claims in turn.

### 1. PHH, BONYM, Chase, and NewRez are entitled to summary judgment on Mr. Sipin's unjust enrichment claims.

"To prevail on a claim of unjust enrichment under Alabama law, a plaintiff must show that: (1) the defendant knowingly accepted and retained a benefit, (2) provided by another, (3) who has a reasonable expectation of compensation."

---

[2] Plaintiff's counsel represented different individuals in *Townsend v. CitiMortgage, Inc.*, Case No. 2:19-cv-251-RAH-SMD, 2021 WL 54201 (M.D. Ala. Jan. 6, 2021), where the court characterized affidavits similar to Mr. Sipin's as "largely mimic[king], word-for-word, the general allegations in the Amended Complaint" before noting that "[g]laringly absent from the [plaintiffs'] affidavits is any degree of detail or specificity," *id.* at *5–*6.

*Portofino Seaport Vill. LLC v. Welch*, 4 So. 3d 1095, 1098 (Ala. 2008). "One is unjustly enriched if his retention of a benefit would be unjust." *Welch v. Montgomery Eye Physicians, P.C.*, 891 So. 2d 837, 843 (Ala. 2004) (cleaned up) (defining an unjust benefit as being given "by mistake or misreliance by the donor" or coerced through "wrongful conduct by the recipient"). Unjust enrichment is an equitable remedy that creates a contract implied in law. *See Mantiply v. Mantiply*, 951 So. 2d 638, 656 (Ala. 2006). "The existence of an express contract on a given subject generally excludes an implied agreement on the same subject." *Id.*

The unjust-enrichment defendants argue that they are entitled to summary judgment on Mr. Sipin's claims because the basis for his claims "is the allegation that Defendants were 'charging [Mr. Sipin] fees and expenses which were not permitted[,] result[ing] in the Defendant[s] being unjustly enriched by the payment of improper or illegal fees which it kept for itself.'" Doc. 84 at 20 (quoting Doc. 27 ¶ 32). The unjust-enrichment defendants contend that these allegations refer to fees charged under Mr. Sipin's mortgage and note, so they cannot be the basis for an unjust enrichment claim under Alabama law. *Id.*

Mr. Sipin responds that he "has sufficiently alleged that the Defendants unlawfully and improperly charged fees and expenses to her [sic] account which he paid resulting in the unjust enrichment to the Defendants." Doc. 88 at 43.

The basis for Mr. Sipin's unjust enrichment claims is covered by the express terms of his mortgage and note. Mr. Sipin's mortgage provides that he may be charged fees associated with his default "including, but not limited to, attorney' fees, property inspection and valuation fees." 83-7 at 19.  That list is not exhaustive: "[T]he absence of express authority in this [mortgage] to charge a specific fee to [Mr. Sipin] shall not be construed as a prohibition on the charging of such fee." *Id.* Instead, the defendants "may not charge fees that are expressly prohibited" by the mortgage "or by Applicable Law." *Id.*

Mr. Sipin does not argue that the fees in this case were not subject to this express provision in his mortgage. Nor does he argue that these fees were expressly prohibited by the mortgage or by any applicable law. Mr. Sipin instead argues, without citing any evidence, that these fees were "improperly paid to [the] Defendant because of mistake or fraud." Doc. 88 at 43. Because these fees are indisputably the subject of an express contract, Alabama law forecloses Mr. Sipin's unjust enrichment claims claims, and summary judgment is **GRANTED** in favor of PHH, BONYM, Chase, and NewRez on counts one through four Mr. Sipin's amended complaint.

### 2.  BONYM, PHH, Chase, Ocwen, and NewRez are entitled to summary judgment on Mr. Sipin's breach of contract claims.

Under Alabama law, a plaintiff must prove four elements to succeed on a breach of contract claim: "[(1)] the existence of a valid contract binding the parties

in the action, (2) [the plaintiff's] own performance under the contract, (3) the defendant's nonperformance, and (4) damages." *Poole v. Prince*, 61 So. 3d 258, 273 (Ala. 2010) (cleaned up).

Chase argues that "the evidence shows no valid contract between" Mr. Sipin and Chase, so Mr. Sipin's claim against it cannot succeed. Doc. 84 at 22. The remaining breach-of-contract defendants argue that Mr. Sipin cannot prove his own performance, that he has offered no evidence of the breach he claims occurred, and that he has suffered no damages as a result of the breaches he alleges. *Id.* at 22–27.

Mr. Sipin responds that the breach-of-contract defendants failed to follow applicable federal regulations. Doc. 88 at 18; *see also Bates v. JPMorgan Chase Bank, N.A.*, 768 F.3d 1126, 1130–33 (11th Cir. 2014). But as those defendants point out, "[n]either the Amended Complaint nor Plaintiff's discovery responses identify this as a basis for the breach of contract claims." Doc. 90 at 10 (citing Doc. 27 ¶¶ 44–91; Doc. 83-7 at 42, 65–67). In Mr. Sipin's words, however, his "claims are based on alleged violations of the breach of the Mortgage contract and the duty of good faith and fair dealing in the contract between the parties." Doc. 88 at 19. Mr. Sipin argues that the regulations provide him numerous options for avoiding foreclosure and that the breach-of-contract defendants failed to offer any options under the regulations. *See id.* at 19–24. Mr. Sipin also argues that these defendants breached and "failed to properly comply with the mortgage" by failing to properly apply his

payments, "comply with the National Housing Act, comply with notice and acceleration requirements and deal with [Mr.] Sipin in good faith." *Id.* at 24. He argues that "a breach of contract claim is allowed . . . when a borrower is not given a proper notice of default and intent to accelerate prior to" a foreclosure sale, and he relies on *Jackson v. Wells Fargo Bank, N.A.*, 90 So. 3d 168 (Ala. 2012). Doc. 88 at 22.

As an initial matter, Mr. Sipin cannot succeed in opposing summary judgment based on his argument that defendants' failed to follow federal regulations because that allegation is not contained in his complaint. *See* Doc. 27 ¶¶ 44–91; *Miccosukee Tribe of Indians v. United States*, 716 F.3d 535, 559 (11th Cir. 2013) ("In this circuit, a plaintiff cannot amend his complaint through argument made in his brief in opposition to the defendant's motion for summary judgment.").

Separately, the breach-of-contract defendants are entitled to summary judgment on two grounds. *First*, Mr. Sipin does not attempt to, and cannot, prove his own performance. The mortgage, and subsequent modifications to the mortgage, obligated Mr. Sipin to make monthly payments that PHH's business records prove he did not make. *See* Doc. 83-7 at 2; Doc. 83-4 at 62. When asked whether he had made mortgage payments as required during his deposition, Mr. Sipin admitted that he did not always make the required payments on his mortgage. *See* Doc. 83-6 at 53–54. He further stated that he had no memory of making any payments on his

mortgage. *Id.* at 81 ("It's possible that I made payment or not made a payment. It's possible that they turned it down or returned it or not returned it."). Even aside from Mr. Sipin's deposition testimony, he has produced no bank statements, no account statements, no receipts, or any documentation even suggesting that he timely paid his mortgage. And, according to the evidence produced by the breach-of-contract defendants, Mr. Sipin could not produce such evidence: again, according to PHH's records, he has not made a mortgage payment since 2018. Doc. 83-4 at 62. For those reasons alone, Mr. Sipin's breach of contract claims fail as a matter of law. Without any evidence supporting his own performance, he could never prove a breach of contract under Alabama law.

*Second*, there is no evidence in this case that Mr. Sipin did not receive the notices that his mortgage contract entitled him to, and Mr. Sipin's erroneous reliance on *Jackson* does not change that. There, the Jacksons had "provided substantial evidence that essential notice under the[ir] mortgage was not given" by virtue of a letter that they received noting that their mortgage had already been accelerated. *Jackson*, 90 So. 3d at 173. But the acceleration clause in the Jacksons' mortgage required a notice indicating that the mortgagee was considering an acceleration before it occurred, which was not given, and therefore, the mortgagee improperly proceeded with a foreclosure sale under the terms of the Jackson's mortgage. *Id.*

17

Here, there is no evidence that Mr. Sipin did not receive the notices his mortgage entitled him to, and these defendants have not conducted a foreclosure sale and taken his home. Mr. Sipin testified that he received mail at both his home and his P.O. box until 2024. *See* Doc. 83-6 at 18–19. His mortgage provides that any notices "shall be deemed to have been given . . . when mailed by first class mail or when actually delivered to Mr. Sipin's notice address if sent by other means." Doc. 83-7 at 19. The defendants have provided evidence that the notices of default and pre-foreclosure notices were delivered via first class mail to Mr. Sipin at the address he provided to PHH. *See, e.g.*, Doc. 83-1 ¶¶ 8, 11, 15, 16; Doc. 83-4 at 12–16, 18–22; Doc. 83-7 at 104–13. By the terms of his mortgage, Mr. Sipin is deemed to have received those notices regardless whether he physically received them, *see* Doc. 83-7 at 19, and Mr. Sipin has offered no evidence that any mail sent by means other than first class mail was not delivered to the address that he provided to PHH. There is no "substantial evidence" suggesting that Mr. Sipin was not given the notices required by his mortgage, only unsubstantiated statements for which no independent proof has been offered. Mr. Sipin's breach of contract claim thus fails because he could not prove the defendants' nonperformance, an element of his claim under Alabama law. *See Poole*, 61 So. 3d at 273.

18

BONYM, PHH, Chase, Ocwen, and NewRez are entitled to judgment as a matter of law on counts five through nine of Mr. Sipin's amended complaint, and summary judgment is **GRANTED** in their favor.

### 3. BONYM, PHH, and NewRez are entitled to summary judgment on Mr. Sipin's defamation, libel, and slander claims.

To succeed on a defamation claim under Alabama law, a plaintiff must prove that the defendant negligently made a false and defamatory statement in an unprivileged communication to a third party, and "either the actionability of the statement irrespective of special harm or the existence of special harm caused by the publication of the statement." *Wal-Mart Stores, Inc. v. Smitherman*, 872 So. 2d 833, 840 (Ala. 2003). "Truth is an absolute defense to defamation." *Id.* at 840 (cleaned up).

The defamation defendants argue that they are entitled to summary judgment on Mr. Sipin's defamation claims because notices they published in the newspaper about Mr. Sipin's foreclosure were true. *See* Doc. 84 at 28–29. Mr. Sipin responds that the allegations in his amended complaint are sufficient to survive summary judgment. Doc. 88 at 38–39.

PHH's records indicate that Mr. Sipin has not made a mortgage payment since 2018. Doc. *See* 83-4 at 62. When defendants published statements that Mr. Sipin's home was in foreclosure, those statements were true, according to the evidence in this case. Mr. Sipin's claims must fail because, in Alabama, "[t]ruth is an absolute

defense to defamation." *Smitherman*, 872 So. 2d at 840 (cleaned up). BONYM, PHH, and NewRez's motion for summary judgment on counts ten through twelve is **GRANTED**.

### 4. PHH and NewRez are entitled to summary judgment on Mr. Sipin's Truth-in-Lending Act claims.

The Truth-in-Lending Act ("TILA") applies to creditors as defined by 15 U.S.C. § 1602. A creditor is defined there as:

> a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement.

15 U.S.C. § 1602(g). Section 1640 of that same title "provides that creditors who fail to comply with . . . TILA's disclosure requirements are subject to civil liability." *Parker v. Potter*, 232 F. App'x 861, 864 (11th Cir. 2007). "In order for a person to be considered a creditor under TILA, [they] must fall under both prongs of § 1602[(g)]." *Id.* at 864.

The TILA-defendants argue that the plain language of TILA does not cover them, and they are thus not subject to civil liability under TILA. *See* Doc. 84 at 31–33. They argue that is so because the face of the mortgage here evidences that the debt was initially payable to "MERS as nominee for the lender, Hometown

20

Mortgage Services, Inc." *Id.* at 32. Mr. Sipin responds that other courts have interpreted TILA "to favor consumers" and this court should do the same. *See* Doc. 88 at 41 (citing *Khan v. Bank of N.Y. Mellon*, 849 F. Supp. 2d 1377 (S.D. Fla. 2012)).

Mr. Sipin's arguments are not persuasive. The court cannot unilaterally extend TILA liability when faced with a statute that clearly references "the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness." 15 U.S.C. § 1602(g). The undisputed facts of this case are that PHH and NewRez did not initially extend credit to Mr. Sipin— Hometown Mortgage Services, Inc., did. Doc. 83-7 at 2. Thus, the reach of section 1602(g) does not extend to PHH and NewRez, who undisputedly acquired these loans after Hometown initially extended credit, so Mr. Sipin's TILA claims fail as a matter of law. Summary judgment is therefore **GRANTED** in favor of PHH and NewRez on counts thirteen and fourteen of Mr. Sipin's amended complaint.

### 5. PHH is entitled to summary judgment on Mr. Sipin's Fair Credit Reporting Act claim.

The Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(a)(1)(A), provides that "[a] person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate." "Furnishers of information, including mortgage lenders, are required to (1) report accurate information to [Credit Reporting Agencies]

regarding consumers . . . ; and (2) conduct an investigation after receiving notice from a [Credit Reporting Agency] of a dispute lodged by a consumer regarding information provided by the furnisher. *Felts v. Wells Fargo Bank, N.A.*, 893 F.3d 1305, 1312 (11th Cir. 2018).

"[T]he only private right of action consumers have against furnishers is for a violation of § 1681s-2(b), which requires furnishers to conduct an investigation following notice of a dispute." *Id.* When a Credit Reporting Agency informs a furnisher that a consumer disputes their reporting, "the furnisher must (1) conduct an investigation with respect to the disputed information; (2) review all relevant information provided by the [Credit Reporting Agency]; and (3) report the results of the investigation to the [Credit Reporting Agency]." *Id.* "If the furnisher finds, following an investigation, that an item of information disputed by a consumer is incomplete, inaccurate, or cannot be verified, the furnisher must either modify, delete, or permanently block reporting of that information." *Id.* A plaintiff must show that an investigation would have produced some correction because "[a]bsent that showing, a plaintiff's claim against a furnisher necessarily fails, as the plaintiff would be unable to demonstrate any injury from the allegedly deficient investigation." *Id.* at 1313.

PHH offers evidence that it received notice of thirteen credit disputes related to Mr. Sipin's account. *See* Doc. 83-1 ¶ 32; Doc. 83-5 at 49–165. PHH investigated

Mr. Sipin's complaints that reporting his mortgage as defaulted was error, but PHH found that Mr. Sipin's account was in default for the months at issue, meaning the information it reported to the CRAs was true. *Id.* at 162–63. PHH therefore contends it is entitled to summary judgment because Mr. Sipin cannot demonstrate any injury from its purportedly deficient investigation. *See* Doc. 84 at 33–35.

Mr. Sipin responds that he "has alleged that PHH violated [the] FRCA, and has provided substantial evidence that the Defendant, PHH did in fact violate the FRCA." Doc. 88 at 36. Mr. Sipin does not cite any evidence to support his argument. *See id.* at 35–38.

PHH correctly argues that Mr. Sipin cannot demonstrate any injury from any potential FRCA violation that he alleges. That is because the undisputed evidence in this case shows that Mr. Sipin was in default on his mortgage when he disputed PHH's reporting to Credit Reporting Agencies. Even if PHH did not correctly investigate Mr. Sipin's claims, it would make no difference—they would not have to retract or correct any of their reporting. And "[a]bsent that showing, a plaintiff's claim against a furnisher necessarily fails, as the plaintiff would be unable to demonstrate any injury from the allegedly deficient investigation." *Felts*, 893 F.3d at 1313.

PHH is entitled to judgment as a matter of law on Mr. Sipin's claim for FCRA violations, and summary judgment is **GRANTED** in PHH's favor on count sixteen of Mr. Sipin's amended complaint.

### 6. PHH is entitled to summary judgment on Mr. Sipin's Fair Debt Collection Practices Act claim.

This court has already ruled that PHH is not a debt collector under the Fair Debt Collection Practices Act except for purposes of 15 U.S.C. 1692f(6). Doc. 71 at 22. That statute prohibits a debt collector from "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if" the debt collector has "no present right to possession of the property claimed as collateral through an enforceable security interest," the debt collector has "no present intention to take possession of the property," or "the property is exempt by law from such dispossession or disablement." 15 U.S.C. § 1692f(6)(A)–(C).

PHH argues that Mr. Sipin does not allege that his property is exempt from repossession or that PHH lacked a present intention to take his property, so Mr. Sipin must show that PHH had no present right to possession of the property through an enforceable security interest. Doc. 84 at 36. Mr. Sipin responds that his allegations in the amended complaint show that PHH threatened to take nonjudicial action, through foreclosure, that it was not entitled to take. Doc. 88 at 34.

Mr. Sipin cannot rely on the allegations in his amended complaint at this phase of litigation, and the evidence makes clear that his allegations lack factual support.

PHH, because of Mr. Sipin's default, had a right to foreclose on his home through an enforceable security agreement, his mortgage, after providing him with adequate notice, which they did here. *See* Doc. 83-7 at 21, 104–13. Therefore, PHH did not violate 15 U.S.C. § 1692f(6) because it did not threaten the foreclosure without a right to do so. Mr. Sipin's claims fail as a matter of law, and summary judgment is **GRANTED** in favor of PHH on count twenty-one of Mr. Sipin's amended complaint.

### 7. BONYM is entitled to summary judgment on Mr. Sipin's claim for declaratory relief.

BONYM argues that it is entitled to summary judgment on Mr. Sipin's claim for declaratory relief, which asks the court to declare that his loan is not in default. Doc. 84 at 38. As discussed extensively herein, the undisputed evidence shows that Mr. Sipin was in default on his mortgage, and he is therefore not entitled to the declaratory relief he seeks. Accordingly, summary judgment is **GRANTED** in favor of BONYM on count twenty of Mr. Sipin's amended complaint.

## IV. CONCLUSION

The undisputed evidence in this case shows that Mr. Sipin has failed to pay his mortgage for nearly eight years. Despite his obvious failure to adhere to the terms of the note and mortgage he executed, he brought this suit. But now that Mr. Sipin's hand has been forced by defendants on summary judgment, he offers no evidence to support his claims. As detailed throughout this opinion, summary judgment is

**GRANTED** to defendants on all counts in Mr. Sipin's amended complaint. A final judgment consistent with this opinion will be entered herewith.

**DONE** and **ORDERED** this 2nd day of February, 2026.

_____
**ANNA M. MANASCO**
UNITED STATES DISTRICT JUDGE